UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT FRANKFORT
CIVIL ACTION NO. 06-17-KKC

**ANTHONY WAYNE WENTWORTH,**                              **PETITIONER**

**V.**

**JAMES MORGAN, Warden**                                  **DEFENDANT**

**REPORT & RECOMMENDATION**

On March 17, 2006, petitioner Anthony Wayne Wentworth, acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent filed an answer and a motion for summary judgment on April 24, 2006, to which petitioner filed a response. Pursuant to local practice, this matter has been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636 (b).

### I.   Background

The factual and procedural history of this case has been set forth by the state courts, first on direct appeal, and subsequently during post-conviction proceedings. On direct appeal, the Kentucky Supreme Court affirmed the judgment of the Henry Circuit Court in an unpublished opinion rendered on October 23, 2003:

> In April 1998, Wentworth was indicted for a number of serious offenses, including first-degree sodomy, in connection with a sexual assault against the thirteen-year-old daughter of his girlfriend at the time. Wentworth initially pled not guilty and was released from custody on bail. Subsequently, he was indicted for additional offenses in connection with another assault of the same thirteen-year-old girl on or about August 17, 1998. These additional charges included first-degree rape, first-degree burglary, and kidnapping. Wentworth again pled not guilty, but this time he remained in custody.
>
> On September 13, 2000, Wentworth appeared before the Henry Circuit Court and pled guilty [Alford Plea][1] to the majority of the counts in each indictment. Sentencing was delayed, however, for two (2) years. Instead, Wentworth was released on a $50,000 unsecured property bond and placed in home detention monitoring through the Kentucky Alternative Program. Further, a number of other restrictions and conditions were placed on Wentworth's release. This included avoiding all contact with the victim or the victim's family, enrolling in and

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160 (1970).

> completing a sexual offender treatment program, being regularly employed at one of four specified locations, earning his GED and, finally, refraining from all illegal activity. Under the plea agreement, if Wentworth adhered to the restrictions and met the conditions, he would, two years hence, be allowed to withdraw his guilty plea and enter a plea to lesser offenses, for which he would receive a probated sentence.
>
> On August 10, 2001, the Commonwealth moved to revoke Wentworth's bond and to have final sentence imposed for the crimes to which Wentworth pled guilty. After a hearing on the motion, the trial court entered an order on August 22, 2001, in which the trial court found that Wentworth had violated the conditions of his release…In the order, the trial court found that Wentworth had violated the terms of his release by failing to furnish satisfactory evidence of his hours employed and failed to engage in active employment in one of the four locations. Wentworth moved to reconsider.
>
> After a hearing on the motion to reconsider, the trial court entered an order on April 19, 2002, that set aside its previous order. The trial court did so because (1) the Commonwealth took the position on the motion to reconsider that it was not seeking to revoke Wentworth's bond based on the hours worked by Wentworth, and (2) the Commonwealth failed prove by clear and convincing evidence that there was indeed work available at one of the four locations established in the plea agreement. Nonetheless, the trial court still revoked Wentworth's bond because it found, by clear and convincing evidence, that Wentworth materially breached the plea agreement by engaging in criminal activity. Specifically, the trial court found that Wentworth was guilty of second-degree forgery, KRS 516.060, in connection with a forged GED certificate Wentworth presented to a potential employer when applying for a job….
>
> Wentworth responded to his Pyrrhic victory by moving to withdraw his guilty plea. The trial court denied the motion and entered a judgment on December 3, 2002, which sentenced Wentworth to a total of twenty years' imprisonment. This appeal followed.

*Wentworth v. Commonwealth of Kentucky*, 2003 WL 22416700, at *1-2 (Ky. 2003).

In affirming the trial court's decision to deny Wentworth's motion to withdraw his guilty plea, the court adopted the lower court's reasoning:

> The trial court's order in this case is a model of clarity and reason…In the order, the trial court found that (1) Wentworth knowingly and voluntarily entered the guilty plea and thereby waived his right to trial; (2) the Commonwealth announced a zero tolerance policy with respect to all conditions set forth in the plea agreement, and that any deviation with respect to any condition would result in motions for revocation of bond and immediate imposition of a final sentencing on the guilty plea; (3) Wentworth understood, a the time the plea agreement was entered into, that he would be incarcerated if didn't fulfill the conditions of the plea agreement; (4) one of the conditions of the plea agreement was that Wentworth must refrain from all criminal activity; (5) Wentworth materially violated the conditions of the plea agreement by using a forged GED certificate in the job application process; and (6) the plea agreement did not bind the Commonwealth to recommend any specific sentence for the crimes to which Wentworth pled guilty.
>
> In denying Wentworth's motion to withdraw his guilty plea, the trial court reasoned that Wentworth "agreed to a deferral of sentencing so that he could receive a better disposition, conditioned on compliance with various terms and conditions. Having failed to comply with

2

>those conditions, he cannot now complain of being sentenced in accordance with the agreement." We agree completely with this reasoning and adopt it as our own.

*Id. at 3-4*.

Having failed to overturn his conviction on direct appeal, petitioner moved for post-conviction relief pursuant to Ky. RCr 11.42. In that motion, petitioner argued that the original plea agreement was illegal under state law, and that his attorney was constitutionally ineffective. The trial court denied relief without a hearing, and petitioner appealed. In affirming the circuit court's decision, the Kentucky Court of Appeals noted that "the trial court reviewed the record of Wentworth's guilty plea and found that it was knowingly, voluntarily and intelligently entered. Further, Wentworth's trial counsel stated on the record that he was prepared to try the case and Wentworth acknowledged that he was satisfied with counsel's representation." *Wentworth v. Commonwealth*, 2005 WL 2105300, at *2 (Ky Ct. App. 2005.). Finally, the court noted that the petitioner stated during his plea hearing that "no one had threatened him or offered him anything off the record in order to induce him to plead guilty." *Id*. Discretionary review was subsequently denied by the Kentucky Supreme Court on November 16, 2005. Petitioner then filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

In his current petition, petitioner argues 1) actual innocence; 2) that the plea agreement was illegal; 3) that the plea agreement was improperly revoked; 4) ineffective assistance of counsel; and 5) that the cumulative effect of multiple errors entitles him to relief. As will be explained below, none of these claims entitle petitioner to the relief he seeks.

### II. Analysis

#### A. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all habeas corpus cases and requires "heightened respect" for legal and factual determinations made by state courts. See *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Relief may be granted on a federal constitutional claim decided by a state court only if the state court decision is "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme

3

Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

All findings of fact by the state court are presumed to be correct and only "clear and convincing evidence" may alter those determinations. *Mitchell v. Mason*, 325 F.3d 732, 737-738 (6th Cir. 2003), *cert. denied,* 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts are also given substantial deference under the AEDPA. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As the Supreme Court recently reiterated: "A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 125 S.Ct. 1432, 1438 (2005); *see also Williams v. Taylor*, 529 U.S. at 405-406.

### B. Actual Innocence Claim

Petitioner bases his claim of innocence primarily on a lack of corroborating evidence, specifically the absence of DNA or other forensic evidence and the lack of witnesses, the victim's credibility, and a purported alibi for his whereabouts during the time of the second incident. In petitioner's view, the State's case rested solely on the "victim's lone, naked allegation." He maintains that "in light of all the evidence, it is more likely than not that no reasonable juror could have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

As an initial matter, there is no indication that any of the evidence cited by petitioner represents new evidence. Petitioner had, at the time of his plea agreement, knowledge of the relative strengths and weakness of the State's case, at least as it concerned the physical evidence against him. Further, petitioner had employed the services of a private investigator in order to substantiate his alibi for August

4

17, 1998, the date of second incident. This is not to imply that discovery of new evidence would, by itself, support habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.") Petitioner must also allege that some constitutional right was violated. To the extent petitioner's motion even articulates such a claim, it is not supported by the record.

Beyond mere conclusory statements that his rights were violated, most of petitioner's memorandum addresses factual issues in a manner that is nothing more than a reweighing of the evidence. The only constitutional claim suggested is in the form of a due process violation pled as a sufficiency of evidence claim. Although petitioner correctly cites *Jackson v. Virginia,* 443 U.S. 307 (1979), for the appropriate standard for such a claim, it offers him little relief.

First, petitioner was not found guilty by a jury, but rather pleaded guilty to a number of very serious charges. His plea was made with full knowledge of both the inculpatory and the exculpatory evidence. Although petitioner contends that his *Alford* plea preserved his claim of actual innocence, a trial court's acceptance of an *Alford* plea acknowledges that -despite a claim of innocence - sufficient evidence exists to support a conviction. *Alford,* 400 U.S. 25, 37-38 & n. 10, 91 S.Ct. 160, 167-168 & n. 10 (noting that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, but affirming constitutionality of acceptance of such a plea in light of strong evidence of guilt). In order for a defendant who has entered an *Alford* plea to gain relief under §2254 on a claim of "actual innocence," "he must show that he was factually innocent of both the...charge to which he pleaded and the original [undismissed or unreduced] charge. . .." *Lyons v. Lee*, 316 F.3d 528, 533 at n.5 (4th Cir. 2003)(citing *Bousley v. United States*, 523 U.S. at 624; *see also Holtgreive v. Curtis*, 174 F. Supp.2d 572, 582-583 (E.D. Mich. 2001)(rejecting challenge to factual basis of *Alford* style plea as basis for habeas relief).

Second, had a trier of fact weighed the evidence, a sufficiency of evidence argument is evaluated by viewing the evidence in a light most favorable to the prosecution and then determining

5

whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319. A mere reweighing of the evidence its not permitted, because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins*, 506 U.S. at 400.

Notwithstanding its ubiquitous presence in television and in movies, DNA and other forensic evidence is not a prerequisite to obtaining a conviction. Often, especially in cases involving an alleged rape, there is little more than the victim's testimony and perhaps medical records and police reports. A case may well turn solely on the veracity of the victim's testimony. Assuming for the moment that the State's evidence was limited to the victim's testimony, her medical records, and police reports, this court cannot say that it would have been unreasonable for any trier of fact to find petitioner guilty.

The State's decision to pursue and prosecute this case was neither contrary to nor an unreasonable application of clearly established federal law. As such, petitioner's claim of actual innocence, though supported by a lengthy narrative, fails for want of an underlying constitutional violation. Put succinctly, "[f]ederal courts are not forums in which to relitigate state trials." *Id.* at 416. Petitioner is not entitled to relief under 28 U.S.C. § 2254.

### C. Propriety/Legality of Plea Under State Law

Petitioner next takes issue with the terms of the plea agreement. Initially, petitioner argues that the offenses for which he was charged were not eligible for any form of alternative sentencing under state law, because state law prohibits alternative sentencing for charges under violent offender and/or sexual offenses statutes, *see e.g.,* KRS §533.250; *Porter v. Commonwealth*, 841 S.W.2d 166 (Ky. 1982)(holding sodomy conviction not entitled to alternative sentencing). In addition, petitioner alleges that the terms of agreement required the court to consider probationary terms and "the victim's consent" to those terms, which requirement petitioner contends was illegal under state law.[2] Finally,

---

[2] It is unclear whether petitioner raised his "victim consent" argument in state court, as this court could find no reference to the argument in petitioner's state court briefs. If he did not previously present it, the claim is procedurally defaulted in this court. However, it is unnecessary to address this issue because the claim rests entirely on state law and provides no grounds for relief under 28 U.S.C. §2254.

petitioner argues that the agreement to treat him as if on probation and to postpone sentencing for two years violated yet another state statute, KRS §532.045. Petitioner appeals to the contract law notion that an agreement is null and void where the terms of the contract are contrary to state law. Here, if the State could not offer petitioner an alternative sentence under the referenced Kentucky statutes or if the terms were otherwise illegal, then the plea was invalid from inception and hence should be voided by this court.

Petitioner's argument must be rejected. First, the legality or illegality of the petitioner's sentence under the nuances of state law is not grounds for relief in this habeas proceeding. *See Tiitsman v. Black*, 536 F.2d 678 (6th Cir. 1976)(petitioner's claim that state trial court violated state rule of criminal procedure in probating him in absentia was not grounds for federal habeas corpus relief). The Kentucky Supreme Court clearly rejected petitioner's "shotgun blast of arguments" that the court lacked authority to accept the plea agreement in the first place, and held that the terms of the agreement were not void under state law. *Wentworth v. Commonwealth*, 2003 WL 22416700 at *2. A federal habeas court does not sit to correct errors of state law.

Petitioner's argument that this is not merely an issue of state law but is fundamentally a due process claim under the "Sixth and Fourteenth Amendments," is unavailing.[3] The misapplication of state law is not cognizable in a federal habeas proceeding unless petitioner can prove that the error deprived him of a fair proceeding or trial. *See Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985). Only when the sentence is arbitrary and capricious does the misapplication of state law violate due process. *See Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). Here, petitioner fails to provide any support for his conclusory assertion that the state court's alleged misapplication of state law implicated his federal due process rights.[4]

---

[3] A Due Process Clause exists in the Fifth and Fourteenth Amendments, but is not found in the Sixth Amendment.

[4] Like petitioner's "victim consent" argument, this claim may be procedurally defaulted. Petitioner did not present this federal nuance to his "illegal plea" claim on direct appeal. While reference to due process is included in briefs relating to petitioner's RCr 11.42 motion, the state court declined to discuss the illegal plea claim because its essence - which relied solely on state law - had

7

Setting aside for the moment that this is squarely an issue of Kentucky law, Kentucky law suggests that where a plea agreement benefits the defendant it will be upheld, even though the terms may be in conflict with a state statute. *Myers v. Commonwealth*, 42 S.W.3d 594 (Ky. 2001). As noted by the Kentucky Supreme Court in affirming the terms of the plea agreement on direct appeal, the same court upheld a very similar plea bargain in the case of *Jones v. Commonwealth,* 995 S.W.2d 363 (Ky. 1999). The Kentucky court's interpretation of state law is binding on this court. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475 (1991). If petitioner had fulfilled his obligations under the agreement, he would have had the opportunity to withdraw his initial plea and to plead to lesser offenses, which offenses were eligible for alternative sentences under state law. The agreement specified that petitioner would receive a probated sentence on the lesser offenses.

Petitioner goes on to lob additional attacks on other aspects of the agreement, such as the prohibition of engaging in any illegal activity, conditioning the agreement on acceptance by the victim, and the delay of sentencing. Again, these attacks provide no grounds for relief under 28 U.S.C. §2254. However the petitioner may feel about the provisions of the agreement in hindsight, he found them acceptable at the time plea bargain was offered by the State. Had he viewed the terms as unreasonable at the time, he could have attempted to negotiate further or rejected the offer outright. Regardless of the interpretation of state law, petitioner was afforded an opportunity to avoid incarceration even though he faced numerous felony indictments. The plea agreement, far from infringing upon any constitutional rights or prejudicing petitioner, was extremely lenient considering the severity of the charges.

A state court's decision will be disturbed under 28 U.S.C. §2254 only where it is contrary to or an unreasonable application of clearly established *federal* law. Here, the Kentucky Supreme Court found no reason to invalidate the plea agreement under Kentucky law. This court, reviewing the matter within the context of a habeas motion, is even less inclined to do so.

### D. Improper Revocation of Alternative Sentence

---

already been addressed on direct appeal.

Petitioner argues that his alternative sentence was improperly revoked for two reasons. First, he contends that the short notice provided to him of the charge against him prior to his hearing violated procedural due process standards. Second, he argues that he was innocent of the charge.

The second argument is easily disposed of. The trial court, applying the proper standard under Kentucky law, found petitioner was responsible for the forged GED certificate found in his employment file. Under the terms of his plea agreement, the alternative sentence was subject to revocation for failing to "refrain from all illegal activity." Under Kentucky law, possession of a forged instrument is a crime. As to the evidence against petitioner, it was weighed by the Henry Circuit Court and will not be reweighed by this court.

Petitioner comes closer to the mark on his first argument by at least forming it in terms of a violation of a constitutional right. According to petitioner, he was afforded a mere 48 hours to prepare for the hearing on the issue of the forged instrument. This was, in his view, a breach of his right to due process. He also notes that the charge was later dismissed by the Jefferson Circuit Court. Petitioner implicitly challenges the fundamental fairness of his current incarceration "for an infraction which was later refuted and dismissed by the prosecuting court." DE # 1, Memorandum In Support of Petition for Writ of Habeas Corpus, at p. 47.

The respondent persuasively argues that both arguments are procedurally defaulted and unavailable for review by this court because petitioner failed to present them to the state courts. During his state appeals, petitioner focused primarily on the proper standard of proof for adjudicating guilt in a revocation hearing – whether it should be "beyond a reasonable doubt" or "clear and convincing evidence." Interpreting state law, the Kentucky courts ruled that the standard is clear and convincing evidence. This Court will not disturb an interpretation of Kentucky law.

Even if petitioner's claims were not procedurally barred, relief would still not be warranted. The amount of due process required to meet constitutional standards will vary based on the nature of the charge. A few days to prepare a defense to a murder charge likely would be insufficient. By contrast, a few days to prepare for a much less severe charge involving a comparatively simple set of

9

facts is far less troubling. The sufficiency of due process does not turn on one particular aspect of the proceedings, but rather is viewed in light of the proceedings as a whole. Petitioner was given notice of the charges against him, was given an opportunity to defend himself, was represented by counsel, and was given the opportunity to appeal. Taken as whole, petitioner was afforded all the process he was due in light of the charge he was facing.

### E. Ineffective Assistance of Counsel Claims

Petitioner lumps together three claims under the rubric of a single "ineffective assistance of counsel" claim. Specifically, petitioner argues that his attorney erred and rendered ineffective assistance when he: 1) failed to file a motion for a speedy trial and agreed to a two-year postponement of sentencing; 2) insisted upon petitioner pleading guilty; 3) promoted and agreed to an "illegal" plea.

The standards for evaluating an ineffective assistance of counsel claim are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-pronged test, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. As noted by respondent, "judicial scrutiny of counsel's performance must be highly deferential…A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenge to conduct, and to evaluate the conduct from counsel's prospective at the time." *Strickland,* 466 U.S. at 689.

#### 1. Speedy Trial Issue

Petitioner first argues that his attorney rendered ineffective assistance by failing to file a motion seeking a speedy trial. This claim has been procedurally defaulted because it was never presented to the state courts. Although petitioner did claim on direct appeal that the two-year delay rendered his *sentence* illegal, he presented that claim only as a violation of a state rule mandating a speedy sentence, and not as a claim of ineffective assistance or as a violation of any federal constitutional right. The Kentucky Supreme Court rejected the claim under state law holding that petitioner "waived the right [to a speedy sentence under the state rule] by entering into the plea agreement." Because petitioner failed to present his current claim to the state courts, and does not show cause or prejudice resulting from his

10

failure to do so, the claim will not be reviewed by this court.

### 2. Voluntariness of Plea/ Coercion

Petitioner's second ineffective assistance claim - that his trial counsel coerced him into accepting the plea agreement - is not subject to the bar of procedural default. This claim is largely supported by letters from petitioner proclaiming his innocence and indicating that he wanted to go trial. Petitioner alleges that his retained attorney threatened to quit his representation if he did not agree to plead guilty, and that petitioner was concerned that he would be left unrepresented. So great was counsel's coercion, according to petitioner, that his plea was rendered involuntary.

In the state court, petitioner presented this claim primarily as an attack on the voluntariness of his plea. However, he also referred to counsel's "coercion" as ineffective assistance in his RCr 11.42 motion. The trial court held that "the record clearly refutes [petitioner's] contention that he was coerced into entering into a plea," finding an evidentiary hearing to be unnecessary. Petitioner appealed the denial of his RCr 11.42 motion on grounds that the trial court should have granted him an evidentiary hearing as well as on grounds that the trial court misapplied the *Strickland* standard. The Kentucky Court of Appeals disagreed, finding that the record amply supported the trial court's finding that petitioner's plea was "knowingly, voluntarily and intelligently entered. Further, Wentworth's trial counsel stated on the record that he was prepared to try the case and Wentworth acknowledged that he was satisfied with counsel's representation." *Wentworth v. Commonwealth*, 2005 WL 2105300, at *2. The court also referred to petitioner's statements during plea proceedings that "no one had threatened him or offered him anything off the record in order to induce him to plead guilty. *Id.* The state court's findings of fact are entitled to substantial deference absent error demonstrated by clear and convincing evidence. In this case, petitioner has offered no more than the self-serving statements previously considered and rejected by the state courts as refuted by the record. Similarly, the state court's conclusion that counsel rendered effective assistance under *Strickland* is neither contrary to, nor an unreasonable application of that case or its progeny. *See Holtgreive v Curtis*, 174 F. Supp.2d at 587 (rejecting claim of coercion refuted by record)..

At the time of his plea, petitioner's counsel had managed to negotiate a deal in which his client, who was facing four felonies plus additional charges which could result in a sentence in excess of 100 years' imprisonment, would avoid any immediate incarceration. Instead, petitioner would be given an opportunity to withdraw his original plea in two years in exchange for entry of a plea to greatly reduced charges. Had petitioner complied with the terms of the agreement, the withdrawal of the original plea and plea to lesser charges would have resulted in a probated sentence – a far cry from 100 years in prison. Even after petitioner violated the terms, he was still sentenced to only 20 years, far less than what he might have faced in the absence of any agreement.

Petitioner submitted a number of letters written by him to his counsel in August and early September 2000 prior to his entry of a plea. In those letters he does maintain his innocence and communicates his desire to go to trial. However, petitioner clearly changed his mind and entered an *Alford* plea in Henry Circuit Court on September 13, 2000. During that hearing the Commonwealth Attorney reiterated that there would be zero tolerance of any violations of the terms of the plea agreement and the presiding judge questioned petitioner as to his understanding of the terms, the consequences of violating the terms, and his satisfaction with his counsel. That petitioner was unable to abide by the conditions set forth in the very lenient plea agreement in no way implies a deficiency on the part his counsel.

### 3. "Illegal" Plea

It is debatable whether petitioner properly presented his claim to the state courts that counsel was ineffective for negotiating and advocating entry of an "illegal" plea. Regardless of whether this claim is procedurally barred, however, it is without merit because the Kentucky Court of Appeals clearly held that the plea agreement was valid under state law and not "illegal." Therefore, counsel's failure to advise petitioner of the plea's "illegality" cannot possibly constitute error under *Strickland* and provides no grounds for relief.

### F. Cumulative Effect of Errors

Little discussion is required on petitioner's claim for relief on the basis of "cumulative errors."

As no substantial error occurred, the cumulative effect of such non-events provides petitioner with no relief.

### III.     Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** the respondent's motion to dismiss [DE #7] be **granted**, that petitioner's petition for writ of habeas corpus be **denied,** and that this case be dismissed and stricken from the active docket.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation will be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Secretary of Heath and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within ten (10) days after being served with a copy. Fed. R. Civ. P. 72(b).

This 29th day of August, 2006

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge